LIQUIDATOR OF CLINTON AND PORT HUDSON RAILROAD COMPANY *v.* C. W.
EASON AND WIFE.

Where the liability of a stockholder in an incorporated company, on a mortgage given to secure his
subscription to the capital stock, depends on a future contingency, prescription will not begin to run
until the contingency has happened, which was to make the payment of the subscription demand-
able.

Where property encumbered with a mortgage to secure the subscription of a shareholder to the capi-
tal stock of a corporation, is sold with shares of stock, for a certain price, and without guaranty
against the mortgage, the purchaser is liable to the original stockholder who, when called on for
payment of the subscription, may call in warranty his vendee, although there had never been any
transfer of the stock on the books of the company.

APPEAL from the District Court of East Feliciana, *Haralson, J.*
*J. McVea,* for plaintiff. *Muse & Hardee* and *J. B. Smith,* for defendants
and appellants.

COLE, J. Two suits were brought against the defendants to compel them to
pay in the one two-fifths, in the other three-fifths, being the total amount, of their
subscription to the capital stock of the Clinton and Port Hudson Railroad Com-
pany.

There was judgment for plaintiff and defendants have appealed.

Appellants rely in this court on the plea of the prescription of five and ten
years to the claim of the New Orleans Gas Light and Banking Company, and
of ten years against the claim for their stock subscription.

The plea cannot prevail against the claim of plaintiff for the amount due on
their subscription to stock.

In the act of mortgage given by defendants to the company, the following
clause exists :

" All which property is to remain so mortgaged and hypothecated, until such
time as any and all loan or loans of money effected or to be effected by said
company, as contemplated by sections 4 and 5 of the amendatory Act herein be-
fore named, as also any interest that may have accumulated thereon shall have
been paid, and the said company acquitted thereof."

By the 5th section of the Act passed in 1833, to incorporate this company,
the President and Directors were authorized to borrow money for the objects of
the act, by the pledge of stock or other security, and to issue certificates or other
evidence of such loans.

At the next session of the Legislature in 1834, the Act of incorporation was
amended, and the capital of the company was increased to $500,000, of which
two hundred and fifty thousand dollars was to be obtained by a loan on real se-
curity, and to secure the loan a subscription of stock to the amount of $300,000
was authorized.

In order to procure the loan of $250,000, authorized by this amendment, the
company were empowered to issue bonds, and did so issue them for the preceding
amount, bearing five per cent. interest. The terms of the bonds were as follows :
$75,000 falling due eight years after date ; $75,000 falling due fifteen years after
date ; and $100,000 becoming due twenty years after date.

This amended Act also provided, that to secure the payment of the capital and
interest of said bonds, the subscribers shall be bound to give mortgage to the

satisfaction of the President and Directors of the company, or property to be in all cases equal in value to the amount of the stock respectively held by them. Sess. Acts 1834, pp. 114, 115 and 116.

On the 11th of January, 1836, the New Orleans Gas Light and Banking Company were released from their obligation to establish a branch at Port Hudson, in the parish of East Feliciana, on condition that they would purchase the bonds aforesaid, of the Clinton and Port Hudson Railroad Company, amounting to $250,000, and lend the company $100,000, at the rate of six per cent. per annum. Session Acts of 1836, p. 1.

The New Orleans Gas Light and Banking Company complied with the condition of the Act of 1836.

The mortgage now sued upon was given, among those of others, to secure the loan of $250,000, and the bonds that should afterwards be issued to represent the same.

The said Banking Company is yet the holder for a large amount of the bonds of the said Railroad Company, secured by stock mortgages, and of bonds given for the loan of the $100,000, and large arrearages of interest are due.

As then one of the conditions of the mortgage of the subscriber to the capital stock of the Railroad Company was, that the property was to remain hypothecated until all loans of money effected, or to be effected, by virtue of the amended Act before described, were paid, and as they are not yet paid, prescription cannot even begin to run.

For this condition involves the principle that the mortgagors cannot have an action to force the mortgagee to raise the mortgage, until all the loans of money made under the amended Act were paid. Suppose the defendant were even now to institute a suit to have their mortgage erased, their action could not be maintained, because this condition in the mortgage obligated them to let the mortgage rest undisturbed until the loans aforesaid were paid.

It may also be observed, that as the mortgage of defendants was granted to *secure* the bonds given for the loan of $250,000, there was, therefore, a tacit condition in this contract of mortgage, that the amount of the mortgage should not be demandable until it was necessary to pay these bonds. The act of mortgage also shows that this tacit condition was in contemplation of the parties at the moment of the execution of the mortgage, for it contains the following clause :

" And the said *Calvin W. Eason* and his said wife, further agree and covenant with the said company, that if on the *requisition* of the Board of Directors thereof made in conformity to the provisions of the amendatory ¡Act of the Legislature mentioned herein, they, the said *Calvin W. Eason* and his said wife, or their heirs or legal representatives, as the case may be, shall fail to pay the said sum of two thousand dollars, or any part thereof, together with any interest that may have accrued thereon, or shall fail to pay any installment, or the whole of any loan or loans of money that he, the said *Calvin W. Eason* shall have obtained from said company, on the credit of this present act of mortgage, as contemplated and provided for by section twenty-four of the before named amendatory Act, together with any interest that may have accrued thereon, then and in such case interest at ten per cent. per annum is to be allowed on any or all sum or sums of money so required, until such time as the same shall be paid."

It thus appears the defendants were not to be obliged to pay until a *requisition* was made upon them for the whole or any part of the amount of their mortgage, and it was then only in default of the whole or a part thereof, that the penalty of

ten per cent. interest was to be allowed on any or all sum or sums of money so required, until such time as the same shall be paid.

This act of mortgage, therefore, left to the *discretion* of the Board of Directors the epoch at which they should exact the payment.

The mortgage debt was not, therefore, *demandable* until the Board of Directors should determine it ought to be demanded.

Now, it appears, that this Railroad Company forfeited its charter, was put in liquidation as an insolvent corporation, and that commissioners were duly appointed under the Act of 1842. Session Acts of 1842, p. 234.

And by Act of 1850, entitled, " an Act for the further liquidation of the Clinton and Port Hudson Railroad and Banking Company," (Sess. Acts. of 1850, p. 225,) the Governor was authorized to appoint a liquidator, whose duty it shall be to " liquidate the affairs of said insolvent corporation, so far as it has not already been done, as speedily as possible, in pursuance of the provisions of this Act, and the several Acts now in force relative to the liquidation and final settlement of the affairs of insolvent corporations." It is admitted in the record, that " through the agency of the Commissioners appointed, and liquidators duly appointed from time to time by the Governor, there has been a continuous and uninterrupted administration of this insolvent corporation, from 1842 up to the date of this suit, and up to the time of this admission."

The Commissioners, and afterwards the Liquidators, were appointed to administer this corporation in the stead of the Board of Directors. It became then their duty, and was in their legal discretion to demand the payment of the subscriptions to the capital stock when, in their opinion, they were needed.

It is established by the decision in the suit of the *Gas Light and Banking Company* v. *B. Haynes, Liquidator of the Clinton and Port Hudson Railroad Company,* 7 An. 115, that the plaintiffs in that case represented they were the holders of the bonds of this Railroad Company, secured by stock mortgages to the amount of two hundred and twelve thousand dollars, and of bonds given for the loan of money to the amount of $92,000, and that there was no means of payment, except by calling upon each of the stockholders of the company for the full amount for which he has subscribed and is liable. They pray that their debt may be acknowledged as due by the company, and that the Liquidator may be ordered to collect from the stockholders the full amount of the stock subscribed by them, and to enforce the mortgages given by the stockholders to secure their subscription to the stock and the bonds issued on the faith of those mortgages.

The Liquidator denied any right of action on the part of plaintiffs against him as Liquidator, and that plaintiffs were bound to resort for payment of their bonds and interest to the individual corporators in their individual capacity. This court held, that it was the special duty of the Liquidator, imposed by the Act of 1850, to collect all the assets of the Clinton and Port Hudson Railroad Company, including the subscriptions of the shareholders, by suit or otherwise, as speedily as possible, and to distribute the amount collected every six months, by filing a tableau of contribution in court, to be homologated by judgment, after legal notices to the creditors.

It is thus shown that the Liquidator did not make the demand of the stockholders, because he was of opinion he was without authority so to do, and, it is admitted in the record, that three-fifths of the debt of defendants for their subscription to the capital stock was legally demanded of them on the 11th day of September, 1852, and the remaining two-fifths on the 22d June, 1854.

Even supposing that prescription could run when it was stipulated in the mort- <span>C. & P. H. R. R.<br>*v.*<br>EASON.</span>
gage, that the property should remain hypothecated until all the loans of money
therein designated were paid, still, as it was a condition in the contemplation of
the contracting parties, that a demand should be made upon the shareholders by
the administration of the company, when, in its discretion, payments of the
whole or a part of the subscription to the stock were necessary, prescription
could not, therefore, begin to run before the debt represented by the amount of
the subscription of each stockholder ought, in the discretion of the administra-
tion, guided by the provisions of law, to be demanded of the shareholders, and
before it was actually demanded.

Citation in the petition for three-fifths of the subscription, was served on the
defendants on the 30th of December, 1853, and as demand is admitted to have
been made for the same on the 11th of September, 1852, prescription had not
accrued.

In the petition for the remaining two-fifths of the subscription, the answer of
defendants was filed on the 5th of November, 1858, and as it is admitted the
demand was made on the 22d of June, 1854, prescription had not accrued for
the balance of the claim.

It should also be remarked, that mortgages to secure the payment of subscrip-
tion to the capital stock of corporations, are given to guaranty the payment of
their liabilities, in the event their assets do not, without the amount of stock-
mortgages, suffice to satisfy them. It would seem, then, as the liability of the
stockholder depends upon a future contingency, that prescription ought not to
begin to run until at least the contingency had happened.

But the defendants contend, that all the obligations of the railroad company
became due as soon as it was declared to be insolvent in 1842, and it was the duty
of the creditors of the company to have forced by process of law the administra-
tion of the company to make the necessary calls upon the shareholders for contri-
butions, and to enforce their collection. C. C. 2049. That by Article 3508 of
the Civil Code, all personal actions, except those enumerated in the title of pres-
cription, are prescribed by ten years, if the creditor be present; and as the com-
pany was put in liquidation in 1843, prescription has accrued in their favor
against any action to compel them to contribute any part of their subscription
to the capital stock, in order to pay the debts of the company.

Defendants rely upon *Brown v. Union Insurance Company*, 3 An. 181, and upon
*T. O. Starke, Receiver of the Atchafalaya Bank,* v. *Burke, Watt & Co.*, 9 An. 342.

The principles decided in those cases are not applicable to this.

The charters of the Union Insurance Company and of the Atchafalaya Bank
provided for the payment of their stock at certain designated periods of time,
except that the charter of the former declared that a specified part of it was pay-
able at no particular period, the Directors being authorized to call in at such
time and in such proportions as they might see fit, and the charter of the latter
provided that the payment of a designated part of the stock might be prolonged
by the Directors.

The principles recognized in these two decisions are, that the creditors of an
insolvent corporation are entitled to cause it to be administered, if the adminis-
tration of the company neglects to act and to force the stockholders to pay the
whole or a part of their stock for the purpose of distribution in a *concurso* among
the creditors of the company; and that if ten years have elapsed from the time
that any installment of stock was due, then prescription had accrued.

C. & P. H. R. R.
v.
EASON.

In the insurance case, the court refused to recognize the validity of the plea of prescription for the part of the stock, for the payment of which no period was fixed.

As no period was fixed for the payment of the stock of defendants, except that which should be designated by the administration of the Railroad Company, and as ten years had not expired from the time when the payment of the stock was demanded, which might be considered the time fixed for payment of the stock, it is clear that even under the two decisions just quoted, prescription had not accrued in favor of the defendants against the claim of the company for the payment of their stock.

In the case of the *New Orleans & Great Northern Railroad Company* v. *Estlin*, it was merely decided that the prescription of three years, of the Act of 1852, (Session Acts, p. 90,) is not applicable to the case of a demand for balance of subscription to the capital stock of a corporation.   12 An. 184.

In *Haynes, Liquidator of the Clinton & P. H. R. R. Company* v. *Isaac Wall & Wife*, the court held, under the second exception plead in the case, that the plea of prescription could not be maintained where the suit against the stockholders was brought in less than ten years after the maturity of the first series of the bonds of the company.   13 An 259,

In *Succession of Shropshire*, 13 An. 528, this court held that there is no prescription of obligations of individuals for the security of stock subscribed and unpaid, so long as the liquidation of the company continues.

This decision corresponds with the *obiter dictum* of the court in *Gas Light & Banking Company* v. *Haynes, Liquidator*, 7 An. 116, except that in that case, the remark is made in answer to the plea of prescription against the claims of the Gas Light Company, whilst in the *Succession of Shropshire*, the decision applies to the plea of prescription against the payment of stock subscriptions.

The decision in the *Succession of Shropshire* conflicts with those in *Brown* v. *The Union Insurance Company* and *Starke, Receiver*, v. *Burke, Watt & Co.*, 3 An. 181, 9 An. 342.

It is unnecessary in this case to express any opinion upon the principle involved in these conflicting decisions, because we have already shown that even if the prescription of ten years could be plead by stockholders of an insolvent company against the payment of their stock, that sufficient time has not elapsed to make the plea effective for the defendants.   And as to the plea of prescription of five and ten years, against the claims of the Gas Light Company, this question will, (if it has not been settled by previous decisions,) as the court said in 7 An. 116, more properly arise on tableaux of distribution and contradictorily with all the creditors of the corporation.

We have been induced to consider the plea of prescription of ten years in this case at length because it is represented to be one of great importance, not only to the immediate parties tó this suit, but to a great many of the citizens of the State.

The only other question to be disposed of is the liability of *George Keller* to to warrant the defendants against their responsibility for their subscription of stock.

The judgment of the District Court rejected the claim in warranty.

It is contended by *Keller*, that he is not liable in warranty, because the 23d section of the Act of 1834, (Session Acts 1834, p. 120) provides that a mortgage stockholder of the Clinton & Port Hudson Railroad Company " may transfer his

stock and be released from his mortgage, upon the new stockholders furnishing mortgage to the satisfaction of the President and Directors of said company." And that, it is admitted by defendants, " there never was any transfer on the books of the company of their mortgaged stock, and that the books show no act of ownership on the part of the warrantor. Nor does the stock register show any mortgaged stock to have been owned by said warrantor."

<span style="float:right">C. & P. H. R. R.<br>v.<br>EASON.</span>

We are of opinion that the 23d section of the Act of 1834 prescribes the mode in which a mortgage stockholder may be released from his obligations to the company, and that it does not prevent a third party from binding himself to guaranty the stockholder against the mortgage debt due by the latter to the company.

When the stockholder sells his shares, it is all he can do to transfer his title to them. It then devolves upon the purchaser, under this 23d section, to furnish a mortgage to the satisfaction of the President and Directors of the company. If he does not, the original stockholder still remains liable to the company, and the purchaser is not a stockholder, but he is still liable to the original stockholder, if he has assumed the mortgage, because it devolved upon him, and not upon the original stockholder, to furnish a mortgage and thus perfect the sale.

In the sale of the tract of land upon which the mortgage was given to the company by the defendants, the latter sold not only the land, but also their twenty shares of stock for a certain price, and the act of sale declares that the vendor warrants the title to this land against everything, except the mortgage in favor of the Clinton and Port Hudson Railroad Company, to secure the payment of the stock herewith transferred, and that the property was sold subject to the mortgage of the company.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be amended as follows : That the part thereof which rejects the claim in warranty of defendants against *George Keller* be avoided and reversed, and that the defendants have judgment in warranty against said *Keller*, and recover from him twelve hundred dollars, with ten per cent. interest thereon from the eleventh day of September, 1852, and the further sum of eight hundred dollars, with ten per cent. interest thereon from the twenty-second day of June, 1854, till paid, and their costs in the lower court ; and that the judgment so amended be affirmed, and the costs of appeal be paid by said *Keller*.

MERRICK, C. J., having been of counsel in this case, recused himself.