The opinion of the court was delivered by
Monroe, J.
Valentine Schwan died leaving a large estate and a will wherein Wm. Schwan, Odille Moreiro and Julia Moreiro are named as universal legatees, and Ludwig Schwan and certain other brothers and sisters of the testator are named as particular legatees. The will was probated, upon the application of the universal legatees, and ordered executed, and the applicants were sent into possession of the estate by judgment of court. Subsequently, Ludwig Schwan, and *1184 the other brothers and sisters of the testator, all of whom reside in Germany, brought suit against the universal legatees, alleging that the latter are incapable, by law, of inheriting from Valentine Schwan, and that the dispositions of his will in their favor should be annulled and petitioners recognized as heirs at law, entitled to the entire estate. They also prayed that the defendants be ordered to file in court a sworn statement of all the property of the estate in their possession, and for such conservatory orders as the court might consider necessary for the preservation of the property, pendente lite. To the petition thus filed is appended an affidavit by counsel, to the effect that he is the agent of the petitioners, who are absent from the State, and that the allegations contained therein are true, to the best of his knowledge and belief. Upon this showing, the judge a quo granted an order in the following terms, to-wit:
“The premises considered, it is hereby ordered that a judicial “sequestration of all the movable property of Valentine Schwan, “deceased, be made; and the said defendants are hereby ordered to “turn over and deliver to the sheriff of the Parish of St. Mary, Louisiana, all the movable property and effects, notes, bonds, stocks, etc., “and all books, papers, accounts, etc., belonging to said succession' “or relating in any manner thereto; and that such of said property “as is -situated in other parishes be turned over and delivered to the “sheriffs of such parishes, and be, by such sheriffs, delivered to the “sheriff of this said parish of St. Mary.
“It is further-ordered, that, within five days, William Schwan, Mrs. “Odille Moreiro, and Julia Moreiro file in this court a full, itemized, “and correct statement, verified under oath, of all the property, books, “papers and accounts of said succession, of which they have, or have “had, possession or control.
“It is further ordered that commissions issue to D. W. Stafford, a “notary public, in and for the parish of St. Mary, and to W. Morgan “Gurley, a notary public in and for the parish of Orleans, for the “taking of inventories of such property of the estate of Valentine Schwan, deceased, as may be found.”
The following day a supplemental petition was filed, alleging the existence, in New Orleans, of a corporation known as “V. Schwan & Co., Limited,” that all the stock in said corporation belonged to the decedent, that the defendants had taken possession and had elected themselves to the offices -thereof; and praying for the appointment of a *1185 judicial sequestrator, or receiver; upon which petition, the following order was made, to-wit:
' “In furtherance of the sequestration issued herein, George A. Vil“lere and Victor Von Schoeler are hereby appointed judicial sequestrators or receivers of 'V. Schwan & Co., Limited/ to take immediate “possession of all the property, books, moneys, etc., belonging thereto, “and to have the control and management thereof, pendente lite. “Let the said George A. Villere and Victor Von Schoeler, in solido, “furnish bond in the sum of thirty thousand dollars, with good and “sufficient surety, conditioned for the faithful performance of, and “discharge of, their duties as such officers.”
Under the order first above mentioned, the sheriff of the parish of St. Mary seized about $60,000.00 worth of movable property, consisting of sugar, notes, and bonds; but, thereafter, upon a rule to set aside said order, and also the order qnade on the supplemental petition, there was judgment as follows:
“It is therefore, ordered, adjudged, and decreed, that the rule filed “by the defendants herein, be sustained and made absolute as far as “the issuance of the writ of judicial sequestration and the order “appointing judicial sequestrators over the property in the possession of the corporation of ‘V. Schwan & Co./ are concerned. These “orders are hereby rescinded and vacated. It is further ordered that “the rule filed by the defendants, in so far as it demands that the “order of this court requiring them to file a statement and inventory “of the property in their possession, received by them, under the last “will and testament of Valentine Schwan, deceased, and by subsequent “orders of this court made thereunder be and the same is hereby overruled and rejected; and that said order remain in full force.”
From this judgment both parties have appealed; the plaintiffs, from so much thereof as sets aside the sequestration and rescinds the order for the appointment of a receiver for “V. Schwan & Co., Limited;” and the defendants, from so much of said judgment as maintains the order directing them to file the sworn statements, and for the taking of inventories. The defendants have moved in this court to dismiss the appeal taken by plaintiffs, and that motion will be now considered.
*1186 ON MOTION TO DISMISS.
It is said that the plaintiffs have not perfected the appeal taken by them in this: “That, as appears from the bond on' file, they claim “to have taken a suspensive appeal, whereas the court allowed a devol“utive appeal only, on the basis of the bond, in the amount of one “hundred dollars, as furnished. That the act of appellants in ignoring the order of court which' had allowed an appeal, to be devolutive “on the bond of one hundred dollars, and to be suspensive on the bond “for a different amount, was their deliberate, wilful, and intentional “act; for which reasons they should be held not to have perfected “any .appeal in accordance with the order of the court granting the “saíne, and their said appeal should be dismissed..”
The order for appeal reads as follows, to-wit:
“Motion for appeal taken up, argued, and appeal granted from the “judgment of the court vacating the writ of judicial sequestration, “made returnable to the Honorable, the Supreme Court of this State, “in accordance with law, and in ease of a devolutive appeal, bond for “costs, fixed at one hundred dollars, and, in case of suspensive appeal, “bond fixed according to law, based upon the amount set out in plaintiffs’. petition.”
Under this order, .the plaintiffs furnished a bond in.the'sum of ,one 'hundred dollars, and claimed that it entitled them to a suspensive appeal. The clerk, in receiving it, however, wrote as follows upon its face: '“Rec’d filed May 24, ’99. But not approved or accepted as “suspénsive appeal bond; should be $450,000 in this case, according to “law: (Signed:) John R. Parkerson, Clerk.”
Thereafter an effort was made by defendants to obtain a ruling from the judge a quo to the effect that the appeal, as taken, operated devolutively only; and, while their application was pending, they made a similar application to this court,' which latter was denied, on the ground that the matter was pending before the judge a quo, and that he had jurisdiction, primarily, to determine the question. State ex rel. Schwan vs. Judge, 51st Ann., 1842.
For the' puipdse of the immediate question before us, it is immaterial whether the judge a quo held that the bond, as filed, entitled the appellants to a suspensive, or to a devolutive appeal, or whether he acted upon the matter at all. The appeal is now in this court, and, whether suspensive or devolutive, the appellants are not to be denied *1187 a hearing upon it because of the construction placed by them upon the order granting it. If they were in error in assuming that they were entitled to a suspensive, rather than a devolutive appeal, upon filing a bond for a hundred dollars, they did not thereby forfeit their right to the devolutive appeal to which, it is conceded, they were entitled upon the filing of such bond, provided that the judgment was, in its nature, appealable. The case thus presented is easily distinguishable from that of State ex rel. Ella Smith vs. Judge, 29 Ann., 839, to which we are referred; and in which it appeared that an order had been granted, in the alternative, for a suspensive and a devolutive appeal; and that the appellant, being unable to furnish bond required for the suspensive appeal gave bond in the amount required for the devolutive appeal. It was held that she could not thereafter take a suspensive appeal, for the reason that two appeals do not lie simultaneously from the same judgment.
The right to one appeal, however, is favored, and in the matter of the Succession of Keller and Wife, 39 Ann., 579, where the pnly application made, and the only order granted was for a suspensive appeal, it was held that the bond, though not filed in time to entitle the appellant to such appeal, would serve to sustain a devolutive appeal.
It is further said, however, that the judgment setting aside the judicial sequestration is not reviewable on appeal; (1) because the original order for the sequestration was an absolute nullity, and its recission can, therefore, work no irreparable injury; (2) because, if it be held that it was within the discretion of the judge a quo to order the sequestration, it was equally within his discretion to set it aside, and such exercise of discretionary power can work no irreparable injury on appeal; and (3) because the judge a quo having acted ex proprio motu in ordering the sequestration, his setting the same aside left no contention before him, and, for this court to reinstate the sequestration, would be to exercise, original jurisdiction.
Considering these propositions in the order in which they are stated: — The judge a quo had the right to hear and determine the case as presented to him. His competency, as to the persons who were before him, and as to the subject matter, is not questioned. %jiether it was proper for him to make the particular, interlocutory, order which we are now considering was a question which, as a part of the whole case, the obligations of his position compelled him to decide, and he was, of necessity, vested with jurisdiction in the premises. “Juris *1188 “diction means the power of him who has the right of judging, etc.” C. P. 79, and, the competency of the judge quoad the subject matter and the parties litigant being 'conceded it includes not only the power expressly conferred by law, but all such power as may be necessary to the full exercise and enjoyment of that expressly conferred. C. P. 130; 877; C. C. 21.
There are many instances in our jurisprudence in which jurisdiction, or power, predicated “on the right of judging” has been exercised by the courts, though not expressly given by law. Thus, more than fifty years ago, in Gridley vs. Connor, 2 Ann., 87, Chief Justice Eustis, as the organ of this court, said:
“We consider the power of the court to appoint a receiver in a “case of this kind to be necessary, for the purpose of effecting the “object of this suit, which is the liquidation and settlement of a partnership, and it falls within that incidental class of powers which “courts have full power to exercise. Story on Partnership, par. 333, “C. C., Art. 21. Our courts are not organized with the proper machinery for the settlement of complicated partnership concerns. They “are, still, obliged to determine and conclude matters of this kind, “and they have the powers necessary for the exercise of their jurisdiction, although such powers may not be expressly given them by law.” C. P.130.
In Brown vs. Insurance Co., 3 Ann., 177, Mr. Justice Eost, after quoting from an opinion of the Lord Chancellor of England, to the effect that the courts of chancery might appoint receivers for corporations, said:
“Under the equity powers vested in our courts and the imperative “command of our law, that, in cases not provided for, the judge shall “proceed and decide according to equity, they might adopt a similar “course if it became necessary to prevent a failure of justice.”
In Eltringham vs. Clark & Pringle, 49 Ann., 343, it was said:
“There is á power in the courts, ex officio, to direct the sequestration of property; to protect the rights of litigants.” See, also, Liquidation of Grant & Jung Furniture Co., Limited, 51 Ann., 1284; State ex rel. Southern Bank vs. Judge, 22 Ann., 581.
It is undeniable that the appointment of a receiver is practically a sequestration of the property of the partnership or corporation for the liquidation of which the receiver is appointed. And there are *1189 many other decisions, predicated upon the statutory law of this State, illustrative of the proposition -that the right to “judge” in a particular case, carries with it the power, or jurisdiction, necessary to .the full and effective exercise of such right.
The following provisions of the Code of Practice, however, bear more directly upon the question at issue, than those to which reference has been made:
“Article 273. Judicial sequestration is generally ordered only at “the request of the parties to a, suit; there are cases nevertheless, “where it is decreed by the court without such request, or in consequence of the execution of a judgment. * * *
“Art. 274. The court may order, ex officio, the sequestration of real property in suits where the ownership of such property is in “dispute, and where one of the contending parties does not seem to “have a more apparent right to the possession than the others. In “such eases, sequestration may be ordered to continue until the matter “of ownership shall have been decided.”
The learned counsel for the defendant insists that the language, used in Art. 273, “there are cases nevertheless, where it is decreed by the court without such request,” is governed and controlled by the provisions of Art. 274, and that the only eases in which, under Art. 273, the sequestration may be ordered by the court, without the request of the parties, are those provided for in Art. 274. In other words that, taking 'the two articles together, the court can, ex officio, order only the sequestration of real property, under the circumstances mentioned in Art. 274.
Such is the conclusion which the learned counsel reaches by comparing the language of the two articles, and construing it in the light of a wide information and experience. But the learned counsel goes further. He says that the order by which the judge a quo expressed his conclusion upon the subject, a conclusion arrived at in the same way, was not only erroneous, but that it was absolutely null and void. And yet, the judge, in making the order acted under the obligation of an imperative duty to determine impartially, and exercised the power “of him who had the right to judge.”
Passing from this view of the subject; it must be admitted that if the interpretation contended for be correct the result is unsatisfactory. In the first place, the language quoted from Art. 273 is rendered useless, is left without application of its own, and serves but to con *1190 fuse the idea expressed in Art 274. In the next place, it may bring about this condition- of affairs, viz: A suit may be brought which involves the ownership of a tract of land worth $100.00 and of $10,-000.00 in currency. In the opinion of the judge, the one litigant has no more, apparent, right to the possession of land or currency than the other, and both land and currency are within reach of the process of the court. Upon the theory propounded, the judge may order the sequestration of the land, which, by no possibility, can be removed beyond his jurisdiction, but is powerless to lay hold of the money, which, of all species' 'of property, most readily takes wings, and he is obliged to remain quiescent, with the knowledge that the main object of the suit is being defeated by its removal. That such results are not altogether accepted, may be seen from the ruling of this court. In Succession of Walker, 32 Ann., 321, it appeared that the decedent, Jennie Ames, had left a will whereby she appointed her surviving husband, Samuel Walker, her executor, and named him as tutor of her minor child by a previous marriage. William P. Ames, a paternal uncle of the minor, opposed Walker’s confirmation as executor, and also opposed his appointment as tutor, on the grounds that the mother had lost the tutorship by reason of her second marriage and had no capacity to make the appointment; and he prayed to be appointed tutor ad hoc, and for a judicial sequestration of the movable property of the succession, pending the litigation; and the sequestration was ordered. In this court, it was said:
“Objection was made to the right or power of Ames to provoke a “judicial sequestration of the property. We are very clear that his “power was ample. He is the nearest male relation., and bound, under “penalty of incurring damages, to take charge of the tutorship, Civil “Code, Art.-286, and was therefore bound, in applying for the tutor“ship, -to take at once, any conservatory measures that were necessary “for the protection of the minor’s property.”
In State ex rel. Hans vs. Judge, 36th Ann., 768, it appeared that the judge a quo, upon its being shown that a natural tutor was neglecting his wards and squandering their estate, ordered that he be suspended, that an action be brought for his removal, and that certain securities belonging to the minors be deposited, in the meanwhile, in the judicial depository. This court said, on application for prohibition:
“The course pursued by the district judge was dictated by a proper “sense and appreciation of his sworn duties, as the tutor of tutors. *1191 “This is not the first instance in which the exercise of extraordinary “powers was sanctioned by this court on the part of a judge similarly situated. 32nd A., 324, Succession of Walker.”
In the -matter of the succession of Carcagno, 43rd A., 1151, the judge a quo had ordered a bank, in which a tin box was deposited, to hold the same, upon the representation that it Contained property belonging to the succession, although the box was deposited in the name of a third person, who claimed to be the owner. Upon an appeal from an order for the taking of an inventory of the contents of the box, and for the delivery of the key, this court said:
“Under the terms of the order, i-ts only effect was to hold the box where it was until its contents 'were ascertained; and when the possessor prevented its opening, the box simply remained in the custody of the bank until further order of the court. The effect in that case, would have been simply that of a judicial sequestration, which we think, in such a case, would have been authorized, under Art. 273 of the Code of Practice, at least until the succession .could be represented by the appointment of an administrator, who could invoke the proper conservatory process to protect the interest of the succession.”
In Louque vs. Succession of Saloy, 45th Ann., 1386, it was held that the claimant, and owner of the box which was the subject of controversy in the case last cited, was not entitled to damages for the sequestration of the box, upon its being established that it contained nothing belonging- to the succession.
In Young vs. Railroad Company, 24th Ann., 40, it was held that the appointment of a sequestrator to take charge of the railroad, its appliances, and appurtenances, after’ the company had obtained the dissolution, on bond, of an injunction sued out by the plaintiff, was unnecessary;, but, neither the authority of the judge, nor the propriety of such appointment were otherwise questioned. This court said: “The Railroad Company having entered.into bond in favor of their adversary, to secure him against loss or damage that might result from their retaining possession of the road pending the suit and, not perceiving that anything subsequently occurred to weaken that security, we do not -think a state of things existed that authorized the judge, ex officio, to appoint a judicial sequestrator.”
These cases can be regarded in no other light than as recognitions of the power, existing in trial courts, to order the judicial sequestratration of movable, as well as immovable prope. "y, when the exigen *1192 cies of a particular case require it, and where such a course is necessary to the exercise of the jurisdiction conferred upon them.
Article 1961, Code Napoleon, contains provisions not dissimilar to those cited from our Code of Practice, and the French authorities sanction the idea that, in controversies over successions, the sequestration of the property, movable and immovable, may be ordered. Fuzier-Herman, Vol. 4, p. 92. Paul Pout, Vol. 8, p. 277.
Our Civil Code, in the articles relating to the affixing of seals “on the effects of successions” provides that it may be ordered by the judge, at the request of anyone who pretends to have an interest, or ex officio, when the presumptive heirs of the .deceased do not reside in the place where he died, or any of them happen to be absent and the officer who affixes the seals is required to appoint a “guardian * * to take care of the seals and of the effects,” and, thereafter, upon the raising of the seals, the judge is required to order an inventory to be made. C. C. 1085, 1090.
And the appointment of the “guardian,” is, in the contemplation of the law, the judicial sequestration, or deposit of the property placed in his charge. C. C. 2979, 2980, 2981. -We, therefore, conclude that, whether we invoke the general provisions of the law, as contained in Arts. 130 and 877 of the Code of Practice, and Art. 21 of the Civil Code, .or the more particular provisions of Art. 273 of the Code of Practice, or of Arts. 1085, 1090 and 2979 et seq. of the Civil Code, there was no' lack of jurisdiction in the judge a quo, to order, ex officio, the sequestration of the succession property, movable and immovable, and that the only question to be determined is whether, “having the right to judge,” he judged correctly quoad the case in which he exercised that right? But it is said, if the question whether he should ex officio order the sequestration was a matter within the discretion of the judge, it was equally within his discretion to determine whether he would set the sequestration aside, and that, having exercised a discretion vested in him by law, his action is not reviewable on appeal. This view is, however, founded on misapprehension. The right of appeal, in such casesj is not affected adversely by the fact that the order, or judgment, from which the appeal' is sought, is within the discretion of the judge by whom it is made. On the contrary, where-such order or judgment is discretionary, the remedy, if the case is one which requires a remedy, is by appeal, rather than by mandamus or prohibition. State ex rel. Benton vs Judge, 26th Ann., *1193 116; State ex rel, R. R. Co. vs. Judge, 36th Ann., 394 State ex rel. Roth vs. Judge, 36th Ann., 49; State ex rel. Johnson vs. Judge, 40th Ann., 854; State ex rel. Iron Works vs. Judge, 44th Ann., 1090. Whether the ease is one which requires a remedy, since the order or judgment, in question, was interlocutory, depends upon whether the resulting injury is, or may be, irreparable; and whether the injury is, in any given case, irreparable, this court has said is a matter concerning which it is difficult to lay down any precise rule, but that the general principle is, 'that an injury, the damage from which is merely in the nature of a pecuniary loss, and can be fairly and fully compensated in money, is a reparable injury, for which a bond for a sufficient amount, and properly secured, would furnish all adequate relief. Crescent, Etc., vs. Police Jury, 32 Ann., 1194; Puckett vs. Judge, 39th Ann., 901; State ex rel. Oil Mills vs. Judge, 50th Ann., 273.
But there are some cases where the bond does not afford adequate relief, and in Eltringham vs. Clark & Pringle, 49th Ann., 540, the distinction is made between a ease where a sequestration is issued in a suit for the recovery of a debt secured by a privilege, and the property is released on bond, and a ease where the plaintiff resorts to the writ for the protection of a right of property; and it is held that, in the latter case, the dissolution of the writ, even on bond, may work irreparable injury. Where, as in the instant ease, the writ is dissolved on motion, and without bond, the' weight of authority is decidedly in favor of the proposition that the injury may be irreparable, and that an appeal should be allowed. See Eltringham vs. Clark & Pringle (cited supra); State vs. Judge, 9th M., 301; Johnson vs. Johnson, 13th Ann., 581; White & Trufant vs. Casenave, 14th Ann., 57; State ex rel. Street vs. Judge, 35th Ann., 515; State ex rel. Roth vs. Judge, 37th Ann., 846; State ex rel. Roth vs. Judge, 38th Ann., 49 ; State ex rel. Gay vs. Judge, 25th Ann., 299; in several of which cases an appeal was allowed, although bond had been given.
It is further said, in behalf of the motion to dismiss, that, having ordered the sequestration, and having dissolved i't, ex officio, and in the exercise of his judicial discretion, the latter order left no contention before the court, and nothing to appeal from. If it be true, as we have found it to be, that irreparable injury may result from the interlocutory order made by a judge in the exercise of his judicial discretion, and that the remedy in such case is by appeal (State ex rel. Roth *1194 vs. Judge, 38th Ann., 49) this proposition is answered.
For these reasons, we are of opinion that the motion to dismiss should be denied.