(54 South. 701.)

No. 18,659.

Succession of DRYSDALE.

In re PIKE.

(Feb. 27, 1911.)

*(Syllabus by the Court.)*

1. CLAIMS OF PARTIES.

The heirs of Andrew Drysdale set forth that they are owners of the property claimed by the heirs of Julia Pike Drysdale.

2. CLAIMS OF PARTIES.

They alleged that, by fraud and artifice, they have been deprived of their ownership.

3. CLAIMS REFERRED TO BE TRIED WITH THE MERITS.

The judge of the district court referred the claims of the former, brought up on exception, to be tried with the merits.

4. RELATOR'S CONTENTION.

Relators seek to have the reference of the issues to the merits set aside and recalled; also, to have recalled and set aside the judicial sequestration issued by the judge of the district court.

5. ISSUES TO BE PASSED UPON.

The issues, whether there is an accounting due to the succession of Andrew Drysdale, and the nature of any right, if his heirs have any, are to be passed upon hereafter.

6. REVIEW ON APPEAL.

This court declines to interfere, at this time, with the trial of the case on relators' application.

7. EXECUTORS AND ADMINISTRATORS (§ 435*)— PROCEEDINGS FOR SETTLEMENT OF SUCCESSION—PROCEEDINGS TO HAVE JUDICIAL SEQUESTRATION ANNULLED.

An appeal from a decree of the district court will prove adequate.

The prayer of respondents being to have it decreed that the property never passed out of the succession of Andrew Drysdale, that it should be listed among the assets of his succession, and that there should be a proper accounting, the suit was brought before the proper court. A special allotment of the case was not necessary.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 435.*]

Proceedings for settlement of the Succession of Andrew Drysdale. Application by Mary Ann Pike for writs of certiorari, mandamus, and prohibition. Petition dismissed.

Woodville & Woodville, for relator. Geo. W. Flynn, for respondents Mrs. Marcella Drysdale Ennis and others.

BREAUX, C. J. The heirs of the late Julia Pike Drysdale, relators, substantially aver that the judicial sequestration by the sheriff has been dissolved by the effect of a judgment of the Supreme Court rendered recently in that succession.

The heirs of Mrs. Drysdale (relators here) ask that the judicial sequestration, issued at the instance of Andrew Drysdale's heirs, be annulled and vacated, and that they (these heirs) be placed in possession of the property.

Hereafter, in referring to these heirs, for convenience, we will refer to the Julia Pike Drysdale heirs as the Julia Drysdale heirs, and to the heirs of the late Andrew Drysdale as the Andrew Drysdale heirs.

This judicial sequestration was issued while the suit of the Andrew Drysdale Heirs v. T. H. P. Carpenter was pending in the courts.

It appears that in August, 1908, Marcella Drysdale, Jeanette Drysdale, Hazel Drysdale, and Rodney Drysdale, to whom, as before mentioned, we will refer as the Andrew Drysdale heirs, sued the executors of the succession of Julia Pike Drysdale and charged that she, the late Julia Pike Drysdale, committed embezzlement of property belonging to the succession of the late Andrew Drysdale, and that other property she owned had been acquired with the funds realized from property embezzled by her.

Upon allegations, most serious in character, made by the Andrew Drysdale heirs against the late Julia Pike Drysdale, the judge of the district court had the property sequestered. It remained in charge of the sheriff, and when the judgment of this court, recently rendered in the Julia Pike Drysdale Case, 127 La. 890, 54 South. 138, had be-

come final, the heirs in whose favor the judgment had been rendered called upon the sheriff to deliver the property which had been sequestered several years ago, as before mentioned.

The sheriff refused to deliver the property. He retained it under an order of judicial sequestration.

Whereupon the Julia Drysdale heirs filed a rule in the district court and asked that court to set aside the writ of sequestration and direct the sheriff to deliver the property.

The district court refused to set aside the judicial sequestration and to issue the writ sued for.

The Andrew Drysdale heirs did not rest their case on the first judicial sequestration, but filed a supplemental petition and obtained a writ of sequestration in the succession of Andrew Drysdale, No. 50,883 of the district court, and made the Julia Pike Drysdale heirs parties defendants. They alleged the different grounds of their claim at some length.

We will have occasion to refer to these grounds when we take up the reasons of the district court for refusing to allow the property to be delivered to the Julia Drysdale heirs before hearing the case on the merits.

The Julia Drysdale heirs excepted to the jurisdiction of the court in answer to the application of the Andrew Drysdale heirs to have the property delivered to the succession of Andrew Drysdale.

They also filed an exception of no cause of action. They filed the plea of prescription, and they pleaded estoppel by record and by conduct.

The rule taken out by the Andrew Drysdale heirs to have the property delivered to the Andrew Drysdale succession and the exceptions to this rule by the Julia Drysdale heirs were referred by the judge of the district court to the merits.

At this point, it may be stated that the further complaint of the Julia Drysdale heirs, applicants here for the writs first above mentioned, and their application to have the judicial sequestration, before referred to, annulled and vacated, is that the succession of Andrew Drysdale is closed; that it formed part of the partition proceedings in the case of Carpenter v. Drysdale, in which Mrs. T. H. P. Carpenter was plaintiff and Mrs. Julia Pike Drysdale was defendant, which resulted in partition of a lot of ground on Esplanade avenue, to which we will have occasion to refer later.

Relators in the writs now before us to vacate the judicial sequestration also urge that the allotment for the trial in the district court was illegal by reason of the fact that there was no allotment at all, but a suit was brought to have the property returned to the succession of Andrew Drysdale. They urge in this connection that a separate action should have been brought by the Andrew Drysdale heirs against the Julia Drysdale heirs; that it was a separate and independent litigation, and not one growing out of or inseparable from the asserted closed succession of Andrew Drysdale.

The said relators to vacate the judicial sequestration allege want of due process of law and violation of both Constitutions, state and federal.

Leaving these attacks and counter attacks between the Drysdale heirs (who, although identified here by the same name, are not related, for Andrew Drysdale was twice married. He had a number of children by the first marriage, but none with Julia Pike Drysdale, his second wife. It follows that the Andrew Drysdale heirs are not related with the sisters of Julia Pike Drysdale, whom we identify here as the Julia Drysdale heirs), leaving, as we just stated, their respective contentions, we take up the answer of our learned Brother of the district court, who sets forth, among other things, that

Marcella Drysdale and others—that is, others identified above as the Andrew Drysdale heirs—appeared before him and alleged that in 1896 their father, Andrew Drysdale, departed this life in Canada, leaving one-third of his estate to his surviving widow in community, the late Julia Pike Drysdale, and two-thirds to the heirs named in his will.

In that year it seems that the will was probated, and Julia Pike Drysdale, his widow, qualified as testamentary executrix.

An inventory was ordered to be taken, but none was taken.

From that time on, everything remained in abeyance.

The learned judge returns that nothing was done thereafter until December, 1905, when Marcella Drysdale and others—that is, the Andrew Drysdale heirs—asked that an inventory be made.

This application for an inventory was met by Julia Pike Drysdale, widow and testamentary executrix, and T. H. P. Carpenter, who was her representative in this state at the time, with the assurance that there was no need for an inventory, as Andrew Drysdale had left no property.

This statement, it seems, made by these two, Carpenter and Mrs. Drysdale, was accepted by the Andrew Drysdale heirs at first, as they alleged, except as to certain property on Esplanade avenue in this city, mentioned by us before, which the two, Mrs. Drysdale and Carpenter, claimed as belonging to the former. But, after a little time, Mrs. Drysdale and Carpenter abandoned this property, and the property was administered as having been property of the community of Andrew Drysdale and Julia Pike Drysdale.

In consequence of this acknowledgment which was finally made, the heirs of Andrew Drysdale were acknowledged as the owners of one-half of the property.

Thereafter the averment of the Andrew Drysdale heirs, as stated in the return of the learned judge of the district court, is that both Carpenter and Mrs. Julia Pike Drysdale insisted that this property was the only property left in which Andrew Drysdale had an interest.

This property was subsequently sold by the Andrew Drysdale heirs to Mrs. Julia Pike Drysdale, the executrix, for the price of $4,000.

The return of the district judge states further that the Andrew Drysdale heirs charge that fraud upon their rights was committed by Mrs. Julia Pike Drysdale, assisted by Carpenter.

The first of the series of frauds charged is the assertion of Julia Drysdale that the property above mentioned was of little value. None the less, that, in some way, a statement made part of the deed of transfer, in which they, without knowledge, were made to renounce all of their rights to the succession of Andrew Drysdale.

They seem anxious to hold T. H. P. Carpenter responsible for this and point to the fact that it is extraordinary that in a deed of sale they should have been made to renounce a valuable succession without consideration when the only purpose was to sell the property, of little value, on Esplanade avenue, by the Andrew Drysdale heirs to Mrs. Julia Pike Drysdale.

According to the return, invoked by the Andrew Drysdale heirs, the property of the Andrew Drysdale succession amounted to $39,-000.

The following is a list:

| | | |
|---|---|---|
| Real estate | $ 8,000 | 00 |
| City bonds | 13,500 | 00 |
| Cash in Traders' Bank in Canada | 4,700 | 00 |
| Cash in hands of T. H. P. Carpenter | 4,000 | 00 |
| Life insurance | 3,000 | 00 |
| Cash in Union Bank | 505 | 00 |
| Cash in Germania Savings Bank | 596 | 40 |
| Amount due by H. P. Labatut | 378 | 05 |
| Promissory notes | 2,100 | 00 |
| Two shares Temperance Hall Stock, New Orleans | 20 | 00 |
| Silverware and household effects | 250 | 00 |
| Diamonds and jewelry | 2,150 | 00 |
| Making total of | $39,399 | 45 |

These parties also charge that there was an additional amount due the late Andrew Drysdale by T. H. P. Carpenter of $400; and a note for $3,900.

These last amounts, it is said, Mrs. Drysdale delivered to Carpenter, although not entitled to the amounts, for asserted services rendered by Carpenter, in enabling Julia Pike Drysdale to illegally retain all the property of Andrew Drysdale without the knowledge of the Andrew Drysdale heirs.

It is further charged by the heirs of Andrew Drysdale that, after the death of her husband, Mrs. Drysdale represented that she had nothing to depend on except small rentals; that, none the less, two years after the death of her husband, she bought 20 shares of the capital stock of the Traders' Bank of Canada, valued at $100 per share, and other valuable stock and securities amounting to over $10,000 with money realized from the proceeds belonging to the late Andrew Drysdale.

These heirs have alleged much more to the same effect. Such as, among other allegations, Mrs. Drysdale and her agent before named concealed things and practiced frauds which became known to them in course of the litigation in the succession of Mrs. Julia Pike Drysdale, recently rendered, as before mentioned. They give details, charge different spoliations of property, specially refer to certain inconsistencies in the statements of the parties as showing wrongs committed. They bring up again the matter of the will of Mrs. Julia Pike Drysdale.

We do not detail all these charges. They are quite damaging and serious enough, if true.

It is sufficient here to state that the heirs of Andrew Drysdale claim that they are entitled to all of the property of the late Andrew Drysdale.

All of these allegations were taken into consideration by Judge Sommerville first, who sat in the place of Judge Skinner of the district court, and resulted in his issuing a writ of judicial sequestration, directing the civil sheriff to sequester, seize, and hold the property and effects.

Afterward, when these charges were brought to the attention of Judge Skinner, he issued another order in the succession of Andrew Drysdale to show cause why the property should not be delivered to the succession of Andrew Drysdale.

This we have already mentioned.

Of course, these are all allegations. We attach no importance to them except to the extent that they are alleged.

For all we know, they may be true and they may not be true. They should certainly be investigated. Courts will not permit such charges to pass unnoticed.

Whatever may be the result on the trial on the merits, it cannot be claimed that at this time there is an unquestionable right to the property which entitles the Julia Drysdale heirs to be placed in possession as owners.

The last-named heirs will lose nothing by availing themselves of the opportunity to vindicate the acts of the one from whom they inherit in case the charges are untrue.

If they are true, it will only afford an opportunity to the Andrew Drysdale heirs to recover their own.

In either event, it is advisable that the case be heard on the merits.

Under article 274 of the Code of Practice, the district court is vested with considerable discretion in the interest of justice.

In Schwan v. Schwan, 52 La. Ann. 1183, 27 South. 678, special recognition was given to that discretion.

It does not seem that the court has exceeded that discretion by referring the exception to the merits. Succession of Thompson, 14 La. Ann. 816.

The purpose was to maintain the succession for the time being.

That purpose finds support in Bank v. Hozey, 2 Rob. 153.

The party can furnish bond and obtain possession of the property. Pitot v. Elmes, 1 Mart. (O. S.) 79; Oddie v. His Creditors, 6 Mart. (N. S.) 476; Stockton v. Hasluck, 10 Mart. (O. S.) 473; Code of Practice, arts. 269, 279, 280.

If summary relief is necessary to avoid a possible loss, the court may direct such a relief to issue.

The alleged failure to allot the case:

This is another of the grounds on the part of the Julia Drysdale heirs to have the judicial sequestration annulled and to be allowed to go into possession.

We do not agree with learned counsel on this point.

Fraud vitiates all things. If it be as alleged, the succession of Andrew Drysdale is not closed, and there was no necessity of alloting the cause as in a closed estate and where the heirs are in possession.

The purpose is, as alleged, to obtain a proper accounting and final administration.

Under the article of the Constitution (134) the action was properly brought in the succession.

For reasons stated, the rule nisi is recalled and discharged; applicant's demand and their petition are dismissed.