(104 So. 318)

No. 25084.

**ASSUNTO v. COLEMAN.**

(April 27, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Principal and agent** ⊚⇒48, 69(7)—**Trusts** ⊚⇒101—**Mandate; agent owes utmost fidelity; agent can acquire no interest adverse to principal; agent purchasing principal's property is constructive trustee.**

Agent owes utmost fidelity, and can acquire no interest adverse to principal, and, if he purchases latter's property, of which he has management, he must be considered as holding it as constructive trustee for principal.

2. **Brokers** ⊚⇒31—**Agent held to have acquired no title to principal's property by purchase at execution sale.**

Broker, in possession of property to rent and sell, *held* to have acquired no title by purchasing it at sheriff's sale, where he did not notify principal of advertisement of property for sale.

3. **Trusts** ⊚⇒366(1)—**Seizing creditor held not necessary party to debtor's suit to annul sale.**

Creditor, seizing and receiving proceeds of property sold under execution, *held* not necessary party to judgment debtor's suit against purchaser to annul sale for want of notice; action being substantially equivalent to one to have sale decreed to inure to plaintiff's benefit.

4. **Trusts** ⊚⇒374—**Purchaser held entitled, on annulment of execution sale, to reimbursement of expenditures.**

Agent purchasing at execution sale property in his hands for sale and rental, without having notified principal of advertisement for sale, *held* entitled, on annulment thereof, to amounts paid to marshal and mortgagee and for insurance policy and taxes.

5. **Trusts** ⊚⇒374—**Judgment debtor held entitled, on annulment of sale, to recover from purchaser monthly rentals from date of sale to restoration of property.**

Judgment debtor *held* entitled, on annulment of execution sale to his selling and renting agent, to recover from latter agreed monthly rental from date of sale until restoration of property, and not merely until filing of supplemental petition praying for such relief.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; E. R. Kaufman, Judge ad hoc.

Suit by Sam Assunto against R. L. Coleman. Judgment for plaintiff, and defendant appeals. Amended and affirmed as amended.

Cline & Plauche, of Lake Charles, for appellant.

Edward F. Gayle, of Lake Charles, for appellee.

OVERTON, J. Plaintiff owned a lot with the buildings and improvements thereon, situated in the city of Lake Charles. The

property owned by him was sold on June 19, 1920, at judicial sale. This sale was made in the execution of a judgment for the sum of $68.15, rendered on constructive service against plaintiff, in favor of the Joe Jacobs Company. At this sale, defendant was the purchaser, the property having been adjudicated to him for the sum of $1,367. This suit was instituted for the purpose of annulling that sale; the ground alleged for annulment being that at the time defendant purchased, he was the agent of plaintiff. The suit was also instituted for the purpose of recovering the rents of said property from the date of the sale until the restoration of the property to plaintiff.

The record discloses that plaintiff, who was a resident of Lake Charles, left that city for Wichita Falls, Tex. · At the time he left, or about that time, he listed his property, through his wife, with defendant for sale, under a contract expiring, according to the preponderance of the evidence, in July, 1920, and also authorized defendant, pending the sale of the property, to rent it and to collect the rents, and remit to him. Defendant endeavored to sell the property, and, as late as May, 1920, wrote plaintiff of his efforts, and of an offer he had received to purchase it. He also rented the property, collected the rents, and made remittances to plaintiff from time to time, collecting the rents even while the property was under seizure, and remitting to plaintiff. His last remittance was on June 11, 1920, eight days prior to the judicial sale at which he became the purchaser of the property. Shortly prior to the sale, he wrote plaintiff, advising him that his property was advertised for sale for taxes, and that, unless the taxes were paid, the property would be sold. In making the last remittance to plaintiff for rent, which was only a week prior to the sale, defendant did not advise plaintiff that his property had been seized and was about to be sold, but instead went to the sale and bought the property for himself.

[1] The foregoing facts show that a fiduciary relation existed between plaintiff and defendant at the time of the sale. The law applicable to these facts is clear. It is that an agent owes the utmost fidelity to his principal, and cannot acquire any interest adverse to him. It is said in Ruling Case Law that:

"The employee is duty bound not to act in antagonism or opposition to the interests of the employer. Everyone—whether designated agent, trustee, servant or what not—who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law." 21 R. C. L. § 10, p. 825.

And later in the same section it is said:

"One who undertakes to collect rents and exercise control over property occupies a fiduciary relation which forbids his placing himself in antagonism to his principal with respect to such property."

And in McClendon v. Bradfield, 42 La. Ann. 160, 7 So. 78, 8 So. 256, quoting from the syllabus, which correctly states the law of the case, it is said:

"An agent cannot acquire an interest adverse to his principal. If he purchases property of which he has the management, and which belongs to his principal, he must be considered as holding it as a constructive trust for his principal."

[2] Applying the foregoing principles to the case at bar, our conclusion is that defendant acquired no title at the sheriff's sale, which he may urge successfully against his principal. The property at the time was in his hands for the purpose of procuring a purchaser, and, pending its sale, to rent for his principal and to remit to him the rents, less the commission for renting and collecting.

Plaintiff was an absentee, and under the circumstances, had a right to expect that defendant would notify him should anything occur by which he might lose title to the property, or which might put an end to the agency. That defendant so understood the relation existing between him and plaintiff appears from the fact that, when the property was advertised for sale for taxes, defendant promptly notified plaintiff of the fact. Under these circumstances, defendant acted inconsistently with his trust, when, instead of notifying plaintiff of the advertisement of his property for sale, he went to the sale and purchased the property. A different case might be presented, if defendant had purchased with the knowledge and consent of plaintiff. But this cannot be said to have been the case, for plaintiff had no actual knowledge that his property was being advertised for sale. The proceedings against him were based on constructive service, and the letters mailed to him by the curator ad hoc, appointed by the court to represent him in the proceedings, failed to reach him. Plaintiff's first knowledge of the proceedings against him was acquired shortly after the property was adjudicated to defendant, when, upon making a remittance for dues to a building and loan association, which had a mortgage on the property, the remittance was returned to him, for the reason that the property had been sold, and the purchaser had paid the dues. Therefore, the record leaves no room to hold that defendant purchased with the knowledge and consent of plaintiff. It may be added that defendant might have known that plaintiff would not have permitted the property to be sold in satisfaction of a judgment for the insignificant sum of $68.15 and costs, had he known that the property was being advertised for sale.

[3] In cases such as the present, it is usually held that the purchase by the agent inures to the benefit of the principal. Plaintiff has, however, sued to have the sale annulled. He has not made the Jacobs Company, the seizing creditor, a party to the suit. For the reason that this company has not been made a party to the suit, defendant contends that the suit should be dismissed. His position is that, if the sale be annulled, the annulling of it will affect the rights of the Jacobs Company.

Strictly speaking, the action should have been one to have the sale decreed to inure to the benefit of plaintiff. In such an action the seizing creditor is not a necessary party, for he is in no manner affected by a decree declaring that the sale inured to the benefit of another. In this instance, the action to annul is substantially equivalent to an action to have the sale decreed to inure to the benefit of plaintiff. All that plaintiff is seeking to do is to destroy the effect of the sale, so that the property will appear to be his property. Whether he does so under one form of action or another is of no particular moment. In so far as relates to defendant, full recompense for his outlay may be given him in either action, and in so far as relates to the Jacobs Company, its rights will not be affected. That company has received its money and defendant will be recompensed for that and other outlays. Hence, the suit will not be dismissed because the Jacobs Company was not made a party to it.

[4] Defendant bid the property in for $1,367. Of this sum he paid the marshal $460.46, and retained the balance of the purchase price to pay a mortgage on the property in favor of a homestead association. The trial court, in annulling the sale, allowed defendant the sum paid by him to the marshal. Since the sale, defendant has paid the building and loan association $369 on the mortgage. This payment the court gave defendant judgment for, and also gave him judgment for the following expenditures made by him on the property, to wit, for an insurance

policy, the premium amounting to $43.75; for city taxes, amounting to $32.12; for state and parish taxes, amounting to $17.95, and for plumbing, amounting to $6.20. We think that the court was correct in allowing these items. Defendant also asked for judgment for other expenditures. These expenditures are not discussed in his brief. They were disallowed by the trial court, and we think correctly so.

[5] In addition to the suit for nullity, plaintiff has, in the same action, sued defendant for the rents and revenues of the property, claiming therefor $20 a month from June 19, 1920, the date of the sale, until possession of the property is restored to him. The trial judge says, in stating the case, as appears from his opinion to be found in the record, that plaintiff asked for judgment for rents collected by defendant from the time of the sale to the filing of his supplemental petition, and later, in the course of his opinion, expresses the view that plaintiff is entitled to judgment for that period, at the rate of $20 a month. The trial judge is in error as to plaintiff's demand for rent. Plaintiff has asked for rent. as we have said, from June 19, 1920, the date of the sale, until the property is restored to him. He has asked, in his answer to the appeal, which was timely filed, that the judgment be amended by allowing him rents and revenues in accordance with the prayer of his supplemental petition.

The evidence shows that the rental value of the property is $20 a month. In fact, the property was rented for that sum at the time of the sale, and the record discloses that defendant continued to rent it for that sum after the sale. We, therefore, feel safe in fixing the rental value of the property at $20 a month. In our view, plaintiff is entitled to the amendment for which he prays.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by allowing plaintiff rent for said property at the rate of $20 a month from June 19, 1920, until defendant restores the possession of the property to plaintiff, instead of for the sum of $360, as allowed by the lower court, the moneyed judgments in favor of the plaintiff and in favor of defendant to compensate one another pro tanto, and it is further ordered that said judgment be amended also by reserving to defendant the right to sue for any other expenditures he may have made on said property after the filing of his supplemental answer, and as so amended that said judgment be affirmed, appellant to pay the costs.