(105 So. 790)

No. 25882.

HAYNESVILLE OIL CO., Inc., v. BEACH (BEACH DRILLING CO., Inc., Intervener).

(Oct. 6, 1925. Rehearing Denied Nov. 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. Trusts ⬅⟶84—Oil well driller, purchasing rig in his own name, with employer's money, held guilty of breach of trust by which title inured to employer's benefit.

Oil well driller, purchasing in his own name, with employer's money, a rig which he was commissioned to purchase in employer's name, committed breach of trust, and title inured to benefit of employer.

2. Trusts ⬅⟶357(1)—Corporation held not bona fide purchaser of drilling rig from incorporator who purchased it in his own name, with employer's money.

Corporation, formed by oil well driller and his office associate, who was fully aware of driller's breach of trust in purchasing rig in his own name, with employer's money, held not good-faith purchaser for valuable consideration of such rig from incorporators, to whom it paid entire capital stock therefor; corporation being mere sham to carry out driller's purpose to claim rig as his own.

3. Mines and minerals ⬅⟶109—Damages recoverable for wrongful abandonment of drilling contract stated.

Owner of oil lease *held* entitled to recover from well driller, who wrongfully abandoned contract before reaching required depth, cost of drilling additional feet in excess of balance, which would have been due driller for going to such depth, less credit for drill stem saved from well and balance of purchase price of drilling rig, which driller paid from profits made in new location to which he removed rig.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by the Haynesville Oil Company, Inc., against T. M. Beach, in which the Beach Drilling Company, Inc., intervened. From the judgment rendered, plaintiff appeals. Reversed and rendered.

T. T. Land, of Homer, and Thornton, Gist & Richey, of Alexandria, for appellant.

L. Percy Garrot and Lester Wilson, both of Shreveport, for appellees.

ST. PAUL, J. This suit involves primarily the ownership of a certain drilling rig, herein sequestered by plaintiff as *its* property, at once bonded by defendant as *his* property, and long afterwards claimed by the intervener as *its* property.

We will first consider the claim as between plaintiff and defendant, and afterwards the claim of the intervener.

I.

In October, 1919, plaintiff owned certain oil leases in Claiborne parish, which it wished to develop; and accordingly, on October 15, 1919, it entered into a drilling contract with defendant by which the latter was to drill an oil well for certain considerations not presently pertinent. One of the clauses of said contract provided that plaintiff should furnish the drilling rig, and it was agreed that, when the well was completed, the rig should be sold to defendant at cost plus cost of transportation, maintenance, and interest; pro-

vided, however, that defendant should make an initial payment thereon of at least $2,000.

The reason why the rig was to be furnished by plaintiff, the leaseholder, and not by defendant, the contractor, appears from the following testimony given by defendant:

"Question: Now, Mr. Beach, don't you know as a matter of fact that at the time this contract was discussed there was some suggestion made that we advance you the money, and it was discussed and the details agreed upon? I will ask you if it is not a fact that I turned to you and said, 'Mr. Beach, in case we were to agree to that, how much could you put into a rig?' And your reply was, 'Not a dollar,' and we then decided that we could not advance you that much money on a rig that you had no equity in?

"Answer: That statement is correct, Mr. Richey."

## II.

The contract of October 15th provided that the rig to be purchased should be "satisfactory to both parties"; and accordingly defendant was commissioned to find and purchase such a rig; but the price of a rig would be about $12,000, and plaintiff had in ready cash only about half that amount.

Accordingly all parties went together to the American National Bank of Shreveport to arrange for financing the balance of the purchase price; defendant having already approached the president of the bank on the subject of a loan for a like purpose.

But the president of the bank was a very busy man, and the proposition was put up to him whilst he had "several people" waiting to talk to him. He remembered that "you gentlemen placed the $6,000 there"; he could not remember all the conversation; but his impression was that defendant was to purchase the rig, and secure the balance of the purchase price by chattel mortgage thereon.

[1] The testimony of the defendant is that, after the signing of the contract, and between conversation above quoted and the visit to the bank president as aforesaid, one of the officers of the plaintiff company took him aside and virtually agreed that defendant should purchase the drilling rig in his own name, using as part payment on the price thereof the cash which plaintiff was about to deposit with said bank. Aside from the fact that said officer does not appear to have any such authority in the premises, he denies that any such agreement was made by him, and we do not believe it. The fact is, however, that defendant, whilst commissioned to purchase the rig in the name of plaintiff, nevertheless purchased it in his own name, using plaintiff's money for that purpose. This was a breach of trust, and the title which defendant obtained to said rig inured to the benefit of plaintiff, whom he represented. McClendon v. Bradford, 42 La. Ann. 160, 7 So. 78, 8 So. 256.

[2] Thereafter defendant took into partnership one A. L. Beason, who was an office associate of his, and fully aware of all the circumstances under which said rig had been purchased.

And thereupon a corporation was formed, the intervener herein, with a capital stock of $100,000, the entire capital stock of which was paid to said Beach and said Beason in payment of this and two other drilling rigs, all of which it mortgaged on the same day for $35,000 to one Phil L. Draiss to secure him against any indorsement which he might give on $35,000 for which the rigs had already been mortgaged by defendant; and of the $100,000 of stock received by Beach and Beason, each retained $25,000; and $25,000 each was given to said Draiss and to one J. W. Pike, who do not appear to have paid any consideration whatever therefor.

Our conclusion is that the intervener herein was not a purchaser in good faith or for a valuable consideration; that said corporation was a mere sham intended to carry out the preconceived purpose of defendant to claim the drilling rig as his own.

We hold that the drilling rig is the property of plaintiff.

### III.

[3] Plaintiff also claims of defendant a large sum for the breach of his contract to drill its well.

The evidence shows that, although plaintiff lived fully up to its contract in every particular, nevertheless, when the well had reached a depth of 1,650 feet, or 1,350 feet less than the required depth, defendant abandoned it without other reason than that he wished to take over another and more profitable contract near by, surreptitiously removing the rig to the new location.

Whereupon plaintiff, in order to hold its leases then about to expire, was obliged to hire another rig and continue operations at large expense. At that time defendant had received from plaintiff over $11,000, or nearly sufficient to carry the well 2,200 feet; the cost of 2,200 feet under the contract being $5 per foot plus $2 additional for 800 feet of "rat-holing"—say $12,600 for 2,200 feet.

Under the circumstances, however, it cost plaintiff $13,650 to go the 650 additional feet necessary to reach 2,200 feet; in other words, $12,050 more than the balance of $1,600 which it would have owed defendant for going that depth.

Our conclusion is that plaintiff is entitled to recover that sum as damages from defendant, subject, however, to a credit of $2,500 for a drill stem saved from the well, and a further credit of $6,200, being the balance of the purchase price of the drilling rig which defendant paid out of the profits which he made in the new location to which he removed said rig— say $12,050, less $8,700, or $3,350.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that plaintiff be decreed the owner of the drilling rig herein sequestered, and entitled to the possession thereof; and that it also have judgment against defendant, T. M. Beach, for the full sum of $3,350, with legal interest from December 7, 1920, date of judicial demand, until paid, and for all costs of the court below, except the costs expended by the intervener.

It is further ordered that the intervention of the Beach Drilling Company be rejected at its costs; costs of this appeal to be paid by it.