No. 3780

Second Circuit

THIEME v. COLLIER ET AL.

(June 2, 1930. Opinion and Decree.)

A. A. Moss, of Winnfield, attorney for plaintiff, appellee.

A. Leonard Allen, of Winnfield, attorney for defendants, appellants.

ODOM, J. This is a suit to collect the balance due on a promissory note signed by A. B. Collier, a minor, and Mr. Collier, his father. A. B. Collier pleaded minority and was dismissed from the suit. M. F. Collier admitted his signature to the note, but denied liability on the ground that he was induced to sign the note through the fraudulent representations of plaintiff's agent, Walker.

There was judgment for plaintiff and defendant appealed.

The facts are that on August 31, 1929, A. B. Collier, the minor son of M. F. Collier, purchased a new automobile from plaintiff at the price of $858, paid and to be paid as follows: The minor traded in an old car valued at $200, gave his note for $590, secured by chattel mortgage on the new car, and his personal note for $68, not secured by the mortgage. The new car was delivered to the minor, who was then living with his father and under his father's control. Plaintiff sent the $590 to a finance corporation in New Orleans with the view of getting the corporation to handle it. The corporation refused to handle it for the reason that it had found, af-

ter investigation, that A. B. Collier, the maker, was a minor. The plaintiff's sales manager, Walker, then took the note to M. F. Collier, the father, and told him that his principal, Thieme, could not carry the note and the corporation would not do so unless he (M. F. Collier) would sign it, and asked him to do so. The father refused at first to sign, but, upon being told that unless he signed it plaintiff would reclaim the new car, he consented to sign it and did sign it. The installments on the mortgage were not paid as they fell due, and plaintiff foreclosed its chattel mortgage, sold the car for less than the balance due, and this suit is for the balance.

Whether the defendant M. F. Collier made any defense in the foreclosure proceedings is not shown; but when the present suit was filed, he defended on the ground that he was induced to sign the note through fraudulent representations made by Walker. The fraudulent representations complained of are these: Defendant says that when Walker presented the note to him for his signature, he stated that the minor, A. B. Collier, had been allowed a credit of $268 on the old car, when as a matter of fact he had been allowed only $200, and that the boy had made up the difference by executing his personal note for $68. He says that if he had known that a credit of only $200 had been given for the old car, he would not have signed the note sued on.

As to whether Walker told M. F. Collier that a credit of $268 had been allowed for the old car is a disputed question. Walker says that he told defendant there had been a down payment of $268, which was true. There is one portion of defendant's testimony which indicates that this was what Walker told him. He said:

"I said, 'Mr. Walker how much was the first payment' and he said two hundred sixty-eight dollars and he just kept on me to sign the note."

He later said that he asked Walker how much he had allowed the boy for the old car and he said $268.

However, we think the defendant is not relieved of his obligation to pay the note, even if it be true that Walker did tell him that amount had been allowed for the old car.

"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. * * * If the advantage to be gained by the party, in favor of whom the artifice is practiced, gives him no unjust advantage, that is to say, no advantage at the expense of the other party, and this latter would neither suffer inconvenience nor loss in consequence of the deception, if the contract were performed, the artifice does not vitiate it." Civ. Code, art. 1847.

The defendant knew at the time he signed the note that he was making himself liable for the balance due on the new car and no more. Insofar as his obligation was concerned, it was fixed. He bound himself to pay $590. The cause, motive, or consideration for his making the contract was to keep plaintiff from taking the new car from his son. He makes that perfectly clear. After reciting the conversations which took place between himself and Walker during the two or three visits which Walker made to him in his efforts to get him to sign the note, in which conversations he says Walker told him that unless he (defendant) signed the note, the plaintiff would have to repossess the new car, because the purchaser, defendant's mi-

nor son, could not be held for the debt, because of his minority, defendant said:

"So, I signed the note to keep them from taking the car away from the boy."

While on cross-examination, defendant said:

"He said he allowed two hundred sixty-eight dollars on the old car and that he would have to take the new car back if I didn't sign the note, and rather than see the boy lose both cars, I signed the note."

The artifice which defendant says Walker practiced upon him did not lead him into an "error bearing on a material part of the contract." The sum and substance, the material part of the contract made between plaintiff and this defendant was that if plaintiff would not take the new car from defendant's son, defendant would pay the chattel mortgage note of $590, and that was the only obligation that defendant assumed. He was willing to assume that obligation and did assume it, and his assumption of the obligation accomplished the only purpose intended. The fact that plaintiff allowed $200, instead of $268, for the old car caused defendant no inconvenience, loss, or injury. Plaintiff, by making the representation as to what was allowed for the old car, obtained no advantage at the expense of this defendant. If by falsely representing that $268, instead of $200, had been allowed as a credit for the old car, plaintiff had led defendant into an error through which he did or could suffer injury, hurt, or inconvenience, or which gave plaintiff an unjust advantage, defendant would have cause to complain. But the facts are that defendant suffered no injury or inconvenience. By signing the note, he got precisely what he expected. He reaped the benefit which he expected to reap. He is therefore not

injured. By signing the note sued on, he did not· become liable for more than the amount of the note. He did not make himself liable for the $68 note signed by his son. That is conceded.

Under the plain letter of the Code, if the advantage to be gained in favor of the party who practices the artifice gives him no unjust advantage, "that is to say, no advantage at the expense of the other party, and this latter would neither suffer inconvenience or loss in consequence of the deception, if the contract were performed, the artifice does not vitiate it."

Counsel for appellant has cited many cases, and among them, Succession of Drysdale, 128 La. 151, 54 So. 701; Cuselich vs. Cuselich, 159 La. 652, 106 So. 20; and Planters' Lbr. Co. vs. Sugar Cane By-Products Co., 162 La. 123, 110 So. 172, in which our court has said that "fraud vitiates all things." A reading of these cases, and all others in which contracts were set aside on account of fraud, discloses that the court found, as a fact, that the artifice practiced resulted in some hurt, injury, loss, or inconvenience to the other party. "Fraud," as the word is used in our Code and in courts of equity, as relates to contracts, "comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another."

As the defendant has suffered no injury or damage from the alleged misrepresentations complained of, he cannot be relieved of his obligation to pay the note which he signed.

The judgment appealed from is correct, and is accordingly affirmed, with all costs.