**WINZEY et al. v. LOUISIANA INDUS-TRIAL LIFE INS. CO., Inc.**

No. 2097.

Court of Appeal of Louisiana.  First Circuit.

April 10, 1940.

E. B. Charbonnet, Jr., of New Orleans, for appellant.

Fred G. Benton and Carlos G. Spaht, both of Baton Rouge, for appellees.

OTT, Judge.

The suit of plaintiffs was dismissed on an exception of no cause or right of action, but on appeal to this court the judgment was reversed and the case remanded for trial. 183 So. 611. The case was tried and judgment was rendered in favor of plaintiffs in the sum of $200, apportioned between the plaintiffs on the basis of $62.35 to the assignee, Capital Funeral Home, Inc., and $137.65 to the beneficiary under the policy, Perninia Winzey, with interest on both amounts at the rate of six per cent per annum from July 20, 1935. The case is again before us on an appeal by the defendant insurance company.

The issues as shown by the petition are stated in our former opinion and it will not be necessary to re-state the allegations of the petition except to say that the nature of the action is two-fold: (1) To set aside a compromise agreement made in settlement of the policy on which the suit is brought; and (2) to recover the face of the policy, $200.

There is no dispute as to the death of the insured in July, 1935; that the policy was then in force and effect; that Perninia Winzey was named as beneficiary therein; that after the death of the insured she made an assignment of part of this policy and another policy in the same company to the Capital Funeral Home, Inc. It is also admitted (and alleged in the petition) that the beneficiary and said assignee signed a full release under this policy and another policy for $98 for a cash payment of $110.40 on September 20, 1935.

It is alleged in the petition and shown by the record that there was no dispute as to liability under the $98 policy which was incontestable, but that the other policy for $200, the one sued on, was less than two years old and the defendant denied liability thereon because it claimed that the insured died as the result of an abortion which it construed as self-destruction or suicide, and under the terms of the policy the company was only liable for a return of the premiums paid thereon which are shown to be about $10.40. Therefore, it is clear that the settlement of the policy sued on was made under the compromise agreement for the difference between the admitted liability of $98 and the amount paid of $110.40, or the sum of $12.40. As the insurance company admitted its liability for the return of the premiums on this policy, it follows that its disputed liability for the full death benefit under the face of the policy was compromised by the payment of about $2.

One of the grounds on which plaintiffs seek to set aside said compromise agreement is that the adjuster for the defendant company stated to them at the time said agreement was signed that there was no liability under this policy as it was less than two years old and was contestable in the company's opinion because the facts submitted in the claimant's statement and the physician's report showed that the death of the insured resulted from an abortion which was construed as self-destruction or suicide under the policy. It is alleged that the said statement of the adjuster was false and untrue as the insured did not die from an abortion and the physician's report did not show that she died from an abortion.

And as a further ground for setting aside the compromise settlement, it is alleged that the trivial sum paid therefor is not a serious and legal consideration to support such an agreement.

The defendant company relies on and alleges the validity of said compromise settlement and denies that there was any fraud or misrepresentation on the part of its adjuster in confecting said compromise settlement.

L. M. Johnson, representing the Funeral Home, testified that he was present when the settlement was made and that the adjuster stated to him and Perninia Winzey that he had investigated and the evidence he had received would show that the death of the insured was self-destruction; that he did not use the word "abortion." The beneficiary testified that the adjuster told her that the insured killed herself, that it was self-destruction; that he did not want to go into any unpleasant investigation (meaning as to the cause of the death of the insured) and she had better sign the agreement; that she signed the release because of these statements made by the adjuster.

The adjuster admits that he told the plaintiffs that the statement of the claimant and report of the doctor showed that the insured died from an abortion which was construed as self-destruction, and that the policy was contestable. It is not shown by the evidence produced by either side whether the physician's report showed that

the insured came to her death as a result of an abortion. It might be inferred from the testimony of the beneficiary that she made no statement in her proofs that the death of the insured resulted from an abortion, unless her statement as a claimant was different from her testimony on the trial.

■ The adjuster did not show the beneficiary and Johnson the report of the doctor. Although the beneficiary was told that this report showed that the insured came to her death by self destruction, that report has never been produced by the defendant company, notwithstanding the fact that if there is such a report it must be in the possession of the defendant. The plaintiffs were entitled to rely on the statements of the adjuster as to the results of his investigation and the information on which he based his statements.

■ Article 1848 of the Civil Code states that fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions, or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed means no more than that it is not to be imputed without legal evidence. And under Article 1832 of the Civil Code it is provided that where one of the parties has information that would have destroyed the error on the part of the other party and withholds this information from him, it comes under the head of fraud and invalidates the contract.

■■ A compromise agreement may be set aside for fraud and error the same as any other contract. Reed v. Holderith, 3 La.App. 378. The very basis for setting aside a contract induced by fraud is because of an error on the part of one of the parties relative to a material fact bearing on the contract which error arose because of some misrepresentation or failure to disclose certain facts by the other party. C. C. art. 1847.

■ In determining whether or not fraud has been proved, the situation of the parties and the circumstances surrounding the transaction may be taken into consideration. American Jurisprudence, Vol. 24, Page 89, Section 257. The situation of the parties to the compromise agreement was such that the adjuster was required to disclose all the information that he had and which was important to the plaintiffs in making a decision for the surrender of a valuable right. The fact that the adjuster did not produce and fully explain all of the information on which his company was denying liability under this policy, coupled with the fact that plaintiffs signed the release relying on the statements made by the adjuster and relinquished their claims for practically no consideration at all, gave rise to such an error as amounts to a fraud on their rights, under Article 1832 of the Civil Code. See Brandon et al v. Gottlieb et al., 16 La.App. 676, 132 So. 283, where this court set aside a compromise agreement on somewhat the same grounds.

We conclude that the trial judge properly set aside the compromise agreement. The only remaining question is as to the amount of the recovery.

■ The policy provides on its face the respective amounts that will be paid on the death of the insured. According to the table in the face of the policy, the full face value of $200 is only payable after the policy has been in force for 36 months. The policy had only been in force 23 full months at the time of the death of the insured, and, according to this table, the sum of $136.80 is payable thereunder. The award of the full face value must have been an oversight. We will reduce the award to correspond with the terms of the policy, and, as the assignee is entitled to the balance due it, the reduction will necessarily come from the amount awarded the beneficiary.

For the reasons assigned, the judgment appealed from is amended by reducing the amount awarded Perninia Winzey from $137.65 to $74.45, and in all other respects the said judgment is affirmed; appellee, Perninia Winzey, to pay the cost of this appeal, and all other cost to be paid by the defendant.